FRANK, Judge.
This matter is before us, after some five years of litigation in the trial court, upon the contention urged by Bonds-Gaylor, Inc. and Reliance Insurance Company (Bonds-Gaylor) that it was error to grant a motion for involuntary dismissal, or a directed verdict, at the close of the evidence offered in support of the claims that Azzarelli Construction Company and Bartle Azzarelli (Azzarelli) tortiously interfered with Bonds-Gaylor’s subcontract and business relationship with Cone Brothers Contracting Company.
We have examined the record in its entirety, but we do not find it necessary exhaustively to detail the factual elements leading to our conclusion that the trial court was mistaken in taking this proceeding from the jury. We have also considered but need not respond to the subsidiary evidentiary issues presented by Bonds-Gaylor. We are convinced after treating the evidence in a light most favorable to Bonds-Gaylor that it established a prima facie showing that Azzarelli engaged in tortious activities leading to the termination of Bonds-Gaylor’s subcontract and business relationship with Cone. See American Motors Corp. v. Ellis, 403 So.2d 459, 467 (Fla. 5th DCA 1981).
In July of 1980, the City of Tampa announced that it had awarded a 600 day sewer construction contract to Cone Brothers Contracting Company as the prime contractor. On September 15, 1980, Cone entered into a subcontract with Bonds-Gaylor pursuant to which Bonds-Gaylor would install various sizes of pipe. The City had approved Bonds-Gaylor for work on the project. Cone agreed to furnish Bonds-Gaylor with the pipe, in timely fashion, and further agreed to assist Bonds-Gaylor in *1107 its performance of the work. Bonds-Gay-lor began preliminary work on the site on October 6, 1980 and started laying the pipe on October 16. Bonds-Gaylor’s pipe laying lasted only 27 days of the 600 day contract. On February 9, 1981, Cone revoked and terminated Bonds-Gaylor’s subcontract.
In the period from September 15 to the moment on February 9 when Cone can-celled its agreement with Bonds-Gaylor, several events occurred forming the basis for Bonds-Gaylor’s claims that Azzarelli had tortiously interfered with its subcontract and business relationship with Cone. In the face of Bonds-Gaylor’s subcontract with Cone, Azzarelli met and negotiated with Cone for the purpose of acquiring the work awarded to Bonds-Gaylor; Azzarelli submitted a proposal to Cone in contemplation of taking over some portion of the pipe laying; Azzarelli disparaged the work being performed by Bonds-Gaylor; Azzarel-li’s agents frequented the project; and Az-zarelli’s agents discussed with Allied, the pipe supplier, its plans to replace Bonds-Gaylor.
It is evident from the record that other factors were present contributing to the demise of Bonds-Gaylor’s relationship with Cone. The evidence developed in Bonds-Gaylor’s case-in-chief revealed that Robert Marsh, Tampa’s project engineer, had received benefits from Azzarelli. Prior to Bonds-Gaylor’s departing the project, Az-zarelli had loaned heavy equipment to Marsh. After Azzarelli replaced Bonds-Gaylor, Azzarelli provided Marsh with truckloads of fill dirt transported and spread at Azzarelli’s expense. The foregoing evidence bears a significant relationship to other facts involving Marsh. Before Bonds-Gaylor began the pipe laying process, Marsh visited Mr. Gaylor’s office and at breakfast that morning told him “that he didn’t think that [he] had the expertise to perform the Manhattan Avenue project.” Marsh did not, however, explain why he held that view. Thereafter, Marsh directed letters to Bonds-Gaylor and his superiors condemning the work undertaken by Bonds-Gaylor, and in December of 1980, he recommended that Bonds-Gay-lor be disqualified from continuing on the project. Marsh’s complaints to his superiors conflicted with the opinion of the day-to-day inspector on the site who reported that Bonds-Gaylor was diligently and properly performing its work. Marsh persisted in finding fault with Bonds-Gaylor’s efforts. We have, however, noted from the record that the delays in the work’s progress were attributable to faulty pipe supplied by Allied, and to Cone’s failure to procure the pipe promptly as was promised in its contract. Several witnesses testified that the problems Bonds-Gaylor experienced precipitating Marsh’s recommendation that Bonds-Gaylor be removed from the project were not attributable to Bonds-Gaylor, e.g., defective or poor quality pipe received from Allied, and the lack of proper bedding for the pipe. Indeed, the testimony of one Azzarelli employee leaves no doubt that the problems Bonds-Gaylor encountered leading up to Marsh’s determination to eliminate it from the project paralleled those experienced by Azzarelli after it assumed the work. For example, the Azza-relli employee testified that the pipe he received through Cone from Allied was often found to be of poor quality and that Azzarelli, not unlike Bonds-Gaylor, was confronted with troublesome dewatering problems. Azzarelli, however, completed its portion of the project.
It is not necessary to identify the legion of cases in this and other appellate courts within the state expressing the principle, in varying terms, that a motion for directed verdict should not be granted save in the circumstance where no reasonable theory of the evidence or the appropriate inferences capable of being drawn from it would sustain the position of the opposing party. See, e.g., Reed by and through Lawrence v. Bowen, 503 So.2d 1265 (Fla. 2d DCA 1986); Medina v. 187th Street Apartments, Ltd., 405 So.2d 485, 486 (Fla. 3d DCA 1981). The fact that the party resisting the motion relies upon circumstantial evidence “does not alter the rule that it is solely within the province of the jury to evaluate or weigh the evidence.” 503 So.2d at 1266.
In an apparent belief that the circumstantial evidence disclosing a progression of events terminating in Bonds-Gaylor’s *1108 removal from the construction project failed independently to satisfy the elements of causation underlying Bonds-Gaylor’s theory of tortious behavior, the trial court obviously attached unwarranted significance to the absence of direct evidence that the City of Tampa was not justified in disqualifying Bonds-Gaylor from its status as a subcontractor on the work. The trial court’s comments in granting Azzarelli’s motion for involuntary dismissal fully portray the error:
The unjustified nature of the interference in this case, in my opinion, termination, rests on circumstantial evidence which does not prove the unjustified nature to the exclusion of every other reasonable theory, and the second half of the element, that being causation, obviously, rests on circumstantial evidence.
It is uncommon that direct evidence of a purpose to commit a wrong can be demonstrated. The evidence presented, however, when viewed favorably to Bonds-Gaylor, was sufficient for the jury to consider whether Azzarelli tortiously interfered with the contract between Bonds-Gaylor and Cone.
Reversed and remanded for the conduct of a new trial.
CAMPBELL, C.J., and PATTERSON, J., concur.